1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEVI LYON, et al.,

                 Plaintiffs,

    v.

THURSTON COUNTY, et al.,

                 Defendants.

Case No. C23-5450-SKV

ORDER ON SUMMARY JUDGMENT

## I.      INTRODUCTION

Before the Court are two motions for summary judgment.  State Defendants[1] argue summary judgment is mandated here because the relevant and undisputed facts show Plaintiffs' claims each fail as a matter of law.  Dkt. 43.  Plaintiffs move for summary judgment on "all causes of action and damages currently pending."  Dkt. 42 at 1.  Being fully advised,[2] the Court

---

[1] "State Defendants" are comprised of the State of Washington, the Washington State Liquor and Cannabis Board, the Washington State Department of Community Development, and the Washington State Patrol.

[2] Plaintiffs request oral argument on their response to State Defendants' motion and in the reply brief to their own motion.  *See* Dkts. 47, 48.  The general rule is that the Court should not deny a request for oral argument made by a party opposing a motion for summary judgment unless the motion is denied. *Cal. Expanded Metal Prods. Co. v. Klein*, 426 F. Supp. 3d 730, 737 (W.D. Wash. 2019) (citing *Dredge*

1  GRANTS State Defendants' motion for summary judgment.  Accordingly, Plaintiff's motion for

2  summary judgment is DENIED.

3  ## II.     LEGAL STANDARD

4      Summary judgment is appropriate when a "movant shows that there is no genuine dispute

5  as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

6  P. 56(a) (emphasis added).  Courts may only consider admissible evidence when ruling on a

7  summary judgment motion.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

8  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to

9  make a sufficient showing on an essential element of his case with respect to which he has the

10  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   The burden then shifts

11  to the nonmoving party to establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co.*

12  *v. Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986).  The Court must draw all reasonable

13  inferences in favor of the nonmoving party.  *Id*.

14      The moving party can satisfy its burden on summary judgment by producing evidence

15  that negates or establishing the absence of evidence to support an essential element of the non-

16  moving party's claim.  *James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir.

17  _____

18  *Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1964)).  However, a district court's denial of a request for oral argument on summary judgment does not constitute reversible error in the absence of prejudice.
*Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (citing *Fernhoff v. Tahoe Reg'l Planning Agency*,

19  803 F.2d 979, 983 (9th Cir. 1986)).  There is no prejudice in refusing to grant oral argument where the parties have ample opportunity to develop their legal and factual arguments through written submissions

20  to the court.  *Id*.  ("When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument].") (quoting *Lake at Las*

21  *Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*).  Both parties have provided the court lengthy written submissions in support of their

22  respective motions and in opposition to the opposing side's motion.  *See* Dkts. 42, 43, 46, 47, 48, 49.
Moreover, State Defendants do not request oral argument.  *See* Dkts. 43, 46.  The Court has determined

23  that oral argument would not be of assistance in deciding the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4), and thus DENIES Plaintiffs' requests for oral argument.

2008).  The party opposing summary judgment must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party also "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When parties submit cross-motions for summary judgment, the court must consider the evidence proffered by both sets of motions before ruling on either one.  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135-36 (9th Cir. 2001).

### III.    FACTS[3]

On August 30, 2019, the Washington State Liquor and Cannabis Board ("WSLCB") received an anonymous complaint regarding a marijuana party bus parked at a cannabis retail store called Uncle Ando's Wurld of Weed in Chehalis, Washington ("Uncle Ando's").  Dkt. 43-2 at 6-7; Dkt 42-5 at 19.  The complaint was assigned to WSLCB Officer Robbie Satterly for investigation into whether Plaintiffs were operating in violation of the Uniform Controlled Substances Act, RCW 69.50.  Dkt. 43-2 at 8; Dkt. 42-5 at 89.  At the time, WSLCB officers suspected Plaintiffs may be violating RCW 69.50.010 and RCW 69.50.465.  Dkt. 42-5 at 89. Officer Satterly and his team subsequently conducted four undercover surveillances of Levi

---

[3] To the extent that any fact in the record is disputed by Plaintiffs, such facts are not material to the Court's analysis.  *See Anderson*, 477 U.S. at 247-78 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the recitation of facts that follows, the Court only cites facts that are relevant and admissible. Furthermore, in their opposition to Plaintiffs' motion for summary judgment, State Defendants move to strike certain evidence from the record.  *See* Dkt. 46 at 11-12.  Because the Court does not rely on any of the objectionable evidence, and because the Court rules in State Defendants' favor, the motion is STRICKEN as moot.

Lyon and his business, Lyon Pride Music LLC (collectively, "Plaintiffs"), between September and November 2019. Dkt. 1-3 at 4; Dkt. 43-3 at 1.

On September 27, 2019, Officer Satterly and his team, including Officer Jacob Garness,[4] met with Plaintiff Lyon while undercover in the Uncle Ando's parking lot. Dkt. 43-3 at 2. Plaintiff Lyon directed the undercover officers "to the 'smoke bus'" and told them they could "sample new cannabis products for free." *Id.* Plaintiff Lyon called this "product sharing." *Id.* The bus was a black 1996 Ford Econoline with a license plate of "LPMUSIC." *Id.* It was legally owned by Richard Podszuz and registered to Plaintiff Lyon. *Id.* Upon entering the bus, Plaintiff Lyon's then-girlfriend, Courtland Crabtree, had the undercover officers complete a club membership form on an iPad and told them that completing the form allowed them to bypass the WSLCB laws and regulations for cannabis sharing and consumption. *Id.* The bus was filled with smoke and smelled strongly of cannabis. *Id.* Crabtree offered the officers a cannabis sample, which they declined. *Id.*

On October 18, 2019, WSLCB enforcement officers observed a Lyon Pride Music bus arrive at a location adjacent to Uncle Ando's. *Id.* The bus was black and had a "LPMUSIC" license plate. Dkt. 43-3 at 3. The officers observed Plaintiff Lyon, Crabtree, and a child exit the bus. *Id.* Officer Garness entered the bus and observed it was filled with smoke and smelled of marijuana. *Id.* There were already about seven people on the bus and Officer Garness observed them smoking and sharing a cannabis joint. *Id.* Officer Garness observed Crabtree place a cannabis dab onto a dab ring and inhale the product. *Id.* Crabtree remembered Officer Garness from his prior undercover surveillance and offered him a dab, which he declined. *Id.* After he

---

[4] Jacob Garness is a WSLCB enforcement officer assigned to the Thurston County Narcotics Task Force.

1    exited the bus, Officer Garness spoke with Plaintiff Lyon as he was in the Uncle Ando's parking

2    lot, playing music and offering free snacks.  *Id.*  Plaintiff Lyon informed Officer Garness there

3    was an event the next day at Uncle Ando's called a "Disc Dab Challenge."  *Id.*  Officer Garness

4    returned to Uncle Ando's that evening and observed the bus was still there.  *Id.*  It was filled with

5    smoke and an overwhelming smell of cannabis.  *Id.*  There were three people on board the bus

6    along with Crabtree, who had bloodshot watery eyes and was unable to walk in a straight line.

7    *Id.*  Crabtree again offered Officer Garness a dab, which he refused.  *Id.*

8        While aboard the bus, Officer Garness observed two other people enter and complete the

9    same form he completed before entering the bus in September.  Crabtree offered the two people

10    a dab; one accepted the offer and smoked the dab.  *Id.*  Crabtree offered that same individual two

11    more dabs.  *Id.*  Officer Garness asked what type of dab they were smoking and Crabtree

12    provided him with a packaged item from Uncle Ando's that was later found in Uncle Ando's

13    inventory list.  *Id.*  As he was leaving, Crabtree offered Officer Garness a cannabis cupcake

14    which he accepted and placed into evidence.  *Id.*

15        On October 19, 2019, Officer Garness participated in a third undercover surveillance

16    operation of Plaintiff Lyon and Lyon Pride Music at the Disc and Dab Challenge event in a

17    vacant lot directly north of Uncle Ando's.  Dkt. 43-4 at 4.  The lot is owned by the same

18    company that owns the land where Uncle Ando's is located.  *Id.*  Officer Garness entered the

19    same bus as the day before and was "overwhelmed" by the odor of cannabis and smoke.  *Id.*

20    Crabtree gave him a wrist band that allowed him to enter the bus and consume cannabis.  *Id.*

21    Officer Garness observed numerous people entering and exiting the Lyon Pride Music bus

22    during the event.  *Id.*  He asked Crabtree for a promotional bag that Lyon Pride Music was

23    distributing and she informed him the bag cost twenty dollars.  *Id.*  He paid for the bag and left

the event.  *Id.*  Inside the bag, he found numerous branded items and two pre-rolled cannabis

joints, all of which were placed into evidence.  *Id.*

On November 23, 2019, the Thurston County Narcotics Task Force joined Officer

Satterly's team in the fourth and final surveillance at the same vacant lot where they previously

surveilled Plaintiffs.  *Id.* at 4-5.  Officer Garness and another WSLCB officer, Officer Pattinson,

met with Plaintiff Lyon outside the bus.  Dkt. 43-3 at 5.  Plaintiff Lyon asked Officer Pattinson

to complete a waiver form on an iPad like the one Officer Garness signed in September.  *Id.*

Upon entering the bus, Officer Garness smelled cannabis.  *Id.*  Crabtree was sitting at the back of

the bus near several cannabis pipes, dab rings, and cannabis concentrates.  *Id.*  She was placing

the cannabis concentrate into the dab rings, then lighting the cannabis and passing it to other

people on the bus.  *Id.*  Officer Garness observed multiple people accept a dab ring and consume

the product.  *Id.*  He asked Crabtree what they were smoking, to which she replied it was

multiple brands of cannabis concentrate.  *Id.*  Officer Garness told Crabtree that Officer Pattinson

was next and that it was his "first time."  *Id.*  Crabtree loaded the dab ring with cannabis

concentrate, lit it, then passed the dab to Officer Pattinson.  *Id.*  The two officers then identified

themselves as WSLCB officers and advised the occupants on the bus they were being detained.

*Id.*  Plaintiff Lyon was arrested for numerous felony charges and his two buses were seized along

with other pieces of his personal property.  Dkt. 1-3 at 6.  The Thurston County Narcotics Task

Force took possession of the buses.  Dkt. 43-2 at 16.  The WSLCB did not participate in the

subsequent civil forfeiture proceedings related to Plaintiff Lyon's arrest and the seizure of his

personal property.  *Id.*

After WSLCB officers secured the scene and Plaintiff Lyon and Crabtree were read their

Miranda Rights, Officer Satterly applied for a search warrant by telephone.  *Id.*  He was unable

to reach a Lewis County Superior Court judge and next contacted Cowlitz County Superior

Court Judge Stephan Warning.  Dkt. 43-4 at 2.  Officer Satterly emailed his application and

affidavit for a search warrant to Judge Warning, who then gave his consent to sign the search

warrant on his behalf.  *Id.*; Dkt. 43-2 at 15; Dkt. 43-2 at 25-27.  Within ten days, Officer Satterly

filed the signed application and affidavit for search warrant, which included his sworn signature,

with the court.  *Id.*  At the time of Plaintiff Lyon's arrest, WSLCB officers believed he was

violating several of Washington's cannabis laws, including RCW 69.50.4013 (unlawful delivery

of cannabis), and RCW 69.50.465 (conducting or maintaining a cannabis club).  Dkt. 43-2 at 15.

Violation of RCW 69.50.465 constitutes a class C felony in Washington.  RCW 69.50.465(3).

Neither Levi Lyon nor Lyon Pride Music were licensed to produce, process, or retail cannabis.

*See* Dkt. 43-2 at 11.

On November 28, 2022, Plaintiff Lyon filed notice of tort claim with the Washington

Department of Enterprise Services.  Dkt. 43-2 at 2.  On January 20, 2023, Plaintiffs filed their

complaint in Pierce County Superior Court.  *Id.*; Dkt. 1-3.  On May 17, 2023, State Defendants

removed the matter to this Court.  *See* Dkt. 1.

### IV.    DISCUSSION

Plaintiffs' complaint states no fewer than ten causes of action for constitutional and tort

violations State Defendants are alleged to have committed in executing the undercover

investigation and surveillance of Plaintiffs and arrest of Plaintiff Lyon, including the search and

seizure of his personal property.  *See* Dkt. 1-3.  In briefing on the present motions, Plaintiffs

stipulate to dismissal of the Department of Community Development and the Washington State

Patrol from this action.  *See* Dkt. 47 at 35.  These parties are accordingly DISMISSED.

Plaintiffs also concede there is no evidence to support a civil conspiracy between State

1    Defendants.  *See id.* at 20.  As such, Plaintiff's first cause of action for civil conspiracy, *see* Dkt.

2    1-3 at 8-9, is also DISMISSED.  The issues are thus narrowed to nine causes of action against the

3    State of Washington and the WSLCB.[5]  Having established the facts of record above, the Court

4    will address each of the remaining causes of action in turn.

5         1.    *Second Cause of Action:  42 U.S.C. § 1983*

6         Plaintiffs bring a claim under 42 U.S.C. § 1983, contending State Defendants' conduct,

7    "particularly from the arrest onward, violated [their] fundamental rights guaranteed in the U.S.

8    Constitution's Bill of Rights."  Dkt. 1-3 at 9.  To sustain a § 1983 claim, a plaintiff must show

9    (1) that he suffered a violation of rights protected by the Constitution or created by federal

10   statute, and (2) that the violation was proximately caused by a *person* acting under color of state

11   or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also Crumpton v.*

12   *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  "[N]either a State nor its officials acting in their

13   official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

14   71 (1989).  State agencies such as the WSLCB are "arm[s] of the state," and are also immune

15

16

17

18   ───────────────────

         [5] State Defendants argue that in addition to failing on the merits, Plaintiffs' state law claims are
19   barred by RCW 4.24.420.  Dkt. 43 at 22; Dkt. 49 at 12-13.  At the time of the events giving rise to this
     action, that statute provided

20                a complete defense to any action for damages for personal injury . . . that
                 the person injured . . . was engaged in the commission of a felony at the
21               time of the occurrence causing the injury . . . and the felony was a
                 proximate cause of the injury.
22

23   RCW 4.24.420 (1987 c 212 § 901).  Although there is likely merit to this argument, it is unnecessary for
     the Court to reach it because this Order grants State Defendants' motion for summary judgment in full.

ORDER ON SUMMARY JUDGMENT - 8

under §1983.  *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991)

("'[A]rms of the state,' are not 'persons' under section 1983.").[6]

Plaintiffs contend that if the Court should "desire," they will "request leave to amend the complaint" to add various individual WSLCB officers as defendants to the complaint.  Dkt. 47 at 9-10.  However, even if adding individual defendants in their personal capacity at this late hour would comport with Fed. R. Civ. P. 15(c), which is doubtful, Plaintiffs have pled no facts that would justify a cause of action against Sam Eikum, Joshua Bolender, or any of "Bolender's superiors" listed in their response to State Defendants' motion.  *See id.* at 9.

To the extent Plaintiffs alleged facts involving conduct by WSLCB officers Satterly, Garness, and Pattinson, amendment would still be futile because law enforcement officers in Washington are immune from § 1983 liability when they make an arrest based upon probable cause.[7]  *See, e.g., Dang v. Ehredt*, 95 Wn. App. 670, 678, 977 P.2d 29 (1999) ("Probable cause to arrest is a complete defense to the liability of a police officer for an action under §1983 arising out of an arrest.").  Even if a law enforcement officer mistakenly believes there is probable cause to make an arrest, if that belief was reasonable, the officer is entitled to qualified immunity.  *Id.* at 679.  Courts in Washington use an objective standard to determine whether an officer had probable cause to arrest.  *State v. Gaddy*, 152 Wn.2d 64, 70 (2004).  "Probable cause exists when the arresting officer is aware of facts or circumstances, based on *reasonably trustworthy*

---

[6] Plaintiffs' argument that State Defendants waived the right to bring a defense under the 11th Amendment is misguided; State Defendants make no such defense.  *See* Dkt. 49 at 3.

[7] As State Defendants point out, the statute of limitations has run as to any claim for personal injury under § 1983 stemming from actions taken prior to November 23, 2019.  *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) ("Section 1983 does not contain its own statute of limitations. . . . [Therefore], the federal courts 'apply the forum state's statute of limitations for personal injury actions.'").  In Washington State, the statute of limitations for a personal injury claim is three years.  RCW 4.16.080(2).

1   *information, sufficient to cause a reasonable officer to believe a crime has been committed.*" *Id.*

2   (citation omitted) (emphasis in original).  The officer does not need sufficient "evidence to prove

3   each element of the crime beyond a reasonable doubt" at the time of the arrest.  *Id.*

4          Between September and November 2019, Officer Satterly and his team conducted an

5   undercover operation to investigate Plaintiff Lyon and Plaintiff Lyon Pride Music.  Over four

6   days of undercover surveillance, WSLCB officers observed Plaintiff Lyon direct members of the

7   public to two different buses registered in his name and promoting his business.  Plaintiff Lyon

8   told the undercover officers they could sample new cannabis products for free aboard his bus.

9   On numerous occasions, WSLCB officers observed Plaintiff Lyon's girlfriend at the time,

10  Courtland Crabtree, offer cannabis products to both undercover officers and members of the

11  public for consumption.  Plaintiff Lyon facilitated Officer Pattinson's execution of a "waiver" for

12  the purpose of allowing him to board a Lyon Pride Music bus and consume cannabis.  These

13  facts and circumstances led Officer Satterly, Officer Garness, and Officer Bolender to each

14  conclude there was probable cause to believe Plaintiff Lyon violated RCW 69.50.4013, a gross

15  misdemeanor, and RCW 69.50.465, a felony.  *See* Dkt. 43-4 at 2; Dkt. 43-3 at 6; Dkt. 43-2 at 15.

16  As such, even if they were named as defendants in their individual capacity, these officers would

17  be immune from liability under § 1983.  Plaintiffs' claims under § 1983 are accordingly

18  DISMISSED.

19         2.      *Third and Fourth Causes of Action:  Article I and Article IX of the Washington*

20                 *State Constitution*

21         Plaintiffs allege State Defendants' conduct, "particularly from the arrest onward, violated

22  [their] fundamental rights guaranteed under" Article I and Article XI of the Washington State

23  Constitution.  Dkt. 1-3 at 10-13; Dkt. 42 at 25; Dkt. 47 at 17-20.  Their complaint lists sixteen

1    state constitutional rights State Defendants allegedly violated without providing any explanation

2    as to what conduct allegedly violated which right(s).  *Id.*  Plaintiffs' motion for summary

3    judgment is equally unenlightening.  *See* Dkt. 42 at 25.  In their response to State Defendants

4    motion, Plaintiffs make a policy argument against "finding" no direct cause of action for

5    violations of the state constitution, then cite five cases that do nothing to further their argument.

6    *Id.* at 19-20.

7        The Washington Supreme Court has indicated no willingness to recognize an inherent

8    civil cause of action for state constitutional violations.  *See*, *e.g.*, *Blinka v. Wash. State Bar Ass'n*,

9    109 Wn. App. 575, 591, 36 P.3d 1094 (2001), *cert. denied*, 146 Wn.2d 1021 (2002)

10   ("Washington courts have consistently rejected invitations to establish a cause of action for

11   damages based upon constitutional violations 'without the aid of augmentative legislation.'")

12   (citations omitted); *see also Sneller v. City of Bainbridge Is.*, 606 F.3d 636, 641 n.1 (9th Cir.

13   2010) (Tallman, J. dissenting) (explaining a "claim for violation of the Washington Constitution

14   has not been a colorable theory in Washington for decades") (citation omitted); *Estate of*

15   *Wasilchen v. Gohrman*, No. C11-0749JLR, 2012 WL 1432201 at *1 (W.D. Wash. April 25,

16   2012) ("[T]here is no private cause of action for damages for the alleged violations of the

17   Washington State Constitution.").  Regardless of Plaintiffs' thoughts on the matter, courts in

18   Washington defer to the legislature to provide "guidance" on "what should or should not be

19   compensation for violation of a state constitutional right and what limitations on liability should

20   be imposed."  *Blinka*, 109 Wn. App. at 591; *see also Sys. Amusement, Inc. v. State*, 7 Wn. App.

21   516, 517 (1972) (holding the constitutional guarantee of due process found in the Washington

22   State Constitution does not, without the aid of augmentative legislation, create a cause of action

23   for money damages against the state in favor of any person deprived of property without due

1  process of law). Plaintiffs have pointed to no statute that supports their claims under the state

2  constitution. As such, Plaintiff's claims under the Washington State Constitution fail as a matter

3  of law and are accordingly DISMISSED.

4      3.    *Fifth Cause of Action: Ultra Vires Actions*

5      Plaintiffs allege an ultra vires claim against State Defendants, vaguely arguing State

6  Defendants' actions before and during the WSLCB investigation and after Plaintiff Lyon's arrest

7  were "ultra vires." *See* Dkt. 1-3 at 12; Dkt. 42 at 62; Dkt. 47 at 21-22. At no point in their

8  complaint or briefing do Plaintiffs specify what act or acts taken by State Defendants are alleged

9  to have been "ultra vires." *See id.* The only cogent argument Plaintiffs make in support of this

10 claim is that "the search and seizure were not made pursuant to a valid warrant or probable cause

11 and the State is collaterally estopped from arguing that it was." Dkt. 47 at 22.

12     Washington case law distinguishes between "government acts that are ultra vires and

13 those acts that suffer from some procedural irregularity." *S. Tacoma Way, LLC v. State*, 169

14 Wn.2d 118, 122 (2010). "Ultra vires acts are those performed with no legal authority and are

15 characterized as void on the basis that no power to act existed, even where proper procedural

16 requirements are followed." *Id.* at 123. It is indisputable that WSLCB is a limited authority

17 Washington law enforcement agency, RCW 10.93.020(5), and its officers are limited authority

18 Washington peace officers. RCW 10.93.020(6). As such, WSLCB officers are empowered to

19 "detect or apprehend violators of the laws" which WSLCB has a duty to enforce. *Id.* WSLCB is

20 responsible for enforcing Washington's Uniform Controlled Substances Act, RCW 69.50.500,

21 which Plaintiff Lyon was suspected of violating at the time of his arrest. *See* Dkt. 43-2 at 14-15.

22 Even if the search and seizure were made in an invalid manner, therefore, Officer Satterly and

23 his team of WSLCB enforcement officers were vested with the authority to conduct the search,

seizure, and arrest of Plaintiff Lyon, and their actions were not ultra vires.  Plaintiffs' argument that State Defendants are collaterally estopped from arguing otherwise holds no water.  This cause of action is accordingly DISMISSED.

      4.     *Sixth Cause of Action:  Tortious Interference with Business and Contracts*

      Plaintiffs bring a claim against State Defendants for tortious interference with business and contracts that is murky at best.  Dkt. 1-3 at 12-13; Dkt. 42 at 25-26; Dkt. 47 at 22-28.  First, as State Defendants argue, the statute of limitations has run as to any alleged tortious action that occurred before November 23, 2019.  *See* RCW 4.16.080.  Second, to establish a prima facie case of tortious interference with a contractual relationship or business expectancy, a plaintiff must prove five elements:

> (1) The existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Pac. Nw. Shooting Part Ass'n v. City of Sequim*, 158 Wn.2d 342, 351 (2006) (citing *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997).  Because Plaintiffs have not produced a valid contract or shown a valid business expectancy that was interfered with, they cannot satisfy the first element of this claim.  Nor could Plaintiffs show, even if there was a valid business expectancy, that State Defendants interfered with it for an improper purpose or by improper means.  As discussed herein, WSLCB officers had probable cause at the time of Plaintiff Lyon's arrest to believe he committed multiple violations of the Uniform Controlled Substances Act, RCW 69.50.  This cause of action is accordingly DISMISSED.

*///*

1        5.      *Seventh Cause of Action:  Intentional and Negligent Infliction of Emotional*

2                *Distress*

3        Plaintiffs allege State Defendants intentionally and negligently inflicted emotional

4   distress on Plaintiff Lyon.  Dkt. 1-3 at 13-13; Dkt. 42 at 28; Dkt. 47 at 28-29.  To prove

5   intentional infliction of emotional distress,[8] a plaintiff must show: (1) extreme and outrageous

6   conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the

7   plaintiff of severe emotional distress.  *Rice v. Janovich*, 109 Wn.2d 48, 61 (1987); Restatement

8   (Second) of Torts § 46 (1965).  The defendant's conduct must have been "so outrageous in

9   character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

10  regarded as atrocious, and utterly intolerable in a civilized community."  *Trujillo v. Nw. Tr.*

11  *Servs., Inc.*, 183 Wn.2d 820, 840 (2015).  To prove negligent infliction of emotional distress, a

12  plaintiff must prove duty, breach, cause, and damage.  *Colbert v. Moomba Sports, Inc.*, 132 Wn.

13  App. 916, 925, 135 P.3d 485 (2006), *aff'd* 163 Wn.2d 43 (2008).  "A defendant owes a duty to

14  only 'foreseeable plaintiffs,' and plaintiffs must experience emotional distress with objective

15  symptoms."  *Id.* at 925-26 (citations omitted).

16       First, as discussed, *supra*, the three-year statute of limitations has run as to any tortious

17  conduct State Defendants are alleged to have taken prior to November 23, 2019.  *See* RCW

18  4.16.080.  Second, even if the statute of limitations was not in play, Plaintiffs' allegations

19  regarding State Defendants' actions are either inaccurate (for example, Plaintiffs classify the

20  search, seizure, detention, and arrest of Plaintiff Lyon as "illegal," which it was not) or they fall

21  far short of the high bar for constituting "outrageous" behavior.  *See* Dkt. 42 at 28.  An

22

23       ---

    [8] Under Washington common law, outrage and intentional infliction of emotional distress are the
    same tort.  *See Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 250 (2001) ("'Outrage' and
    'intentional infliction of emotional distress' are synonyms for the same tort.").

1    undercover investigation by authorized enforcement officers into potentially illegal drug

2    activities, followed by an arrest pursuant to probable cause and a search and seizure pursuant to a

3    warrant, do not amount to extreme or outrageous conduct, nor can those actions constitute a

4    breach of duty to Plaintiffs.

5         6.    *Eighth Cause of Action:  Malicious Prosecution*

6         Plaintiffs claim State Defendants committed the tort of malicious prosecution against

7    Plaintiff Lyon.  Dkt. 1-3 at 14; Dkt. 42 at 26-27; Dkt. 47 at 29-31.  "Probable cause is a complete

8    defense to a malicious prosecution action."  *Hanson v. City of Snohomish*, 121 Wn.2d 552, 560

9    (1993).  "[P]robable cause exists when a person of reasonable caution is justified in believing '*an*

10   *offense* has been or is being committed.'"  *Fondren v. Klickitat Cnty.*, 79 Wn. App. 850, 856-57,

11   905 P.2d 928 (1995) (emphasis in original).   As discussed, *supra*, the WSLCB officers involved

12   in Plaintiff Lyon's arrest had probable cause to believe he violated RCW 69.50. 4013 and RCW

13   69.50.465, a felony.  As such, this cause of action is also DISMISSED.

14        7.    *Ninth Cause of Action:  Barratry*

15        Plaintiffs next bring a claim under the state criminal statute against barratry.[9] Dkt. 1-3 at

16   Dkt 42 at 27; Dkt. 47 at 31-33; *see also* RCW 9.12.010.  For reasons discussed throughout this

17   opinion, none of their arguments in support of this claim are persuasive.  *See* Dkt. 47 at 31-33.

18   Even if they were, Plaintiffs cite no authority to support the proposition that a plaintiff can

19   recover civil damages under the state criminal barratry statute.  As such, this cause of action is

20   also DISMISSED.

21

22   _____

23   [9] Plaintiffs argue that State Defendants bear burden of *disproving* barratry, *see* Dkt. 47 at 32, but
     this is a gross misstatement of the summary judgment standard.  Under Rule 56(a) of the Federal Rules
     for Civil Procedure, a movant for summary judgment must show there "is no genuine dispute as to any
     material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

8.    *Tenth Cause of Action:  Conversion and/or Trespass to Chattels*

Plaintiffs' final cause of action is for conversion and/or trespass to chattels.  *See* Dkt. 1-3 at 15; Dkt. 42 at 27-28; Dkt. 47 at 33-34.  Under Washington law, "[c]onversion is the act of willfully interfering with any chattel, *without lawful justification*, whereby any person entitled thereto is deprived of the possession of it."  *Thorley v. Nowlin*, 29 Wn. App. 2d 610, 637, 542 P.3d 137 (2024) (citing *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 83, 18 P.3d 1144 (2001)).  Trespass to chattels is "the intentional interference with the possession or physical condition of personal property in the possession of another *without justification*."  16 David K. DeWolf & Keller W. Allen, Wash. Prac., Tort Law and Practice, § 14:15 (5th ed.), Westlaw (database updated Oct. 2024); *see also Brutsche v. City of Kent*, 164 Wn.2d 664, 673-74 (2008).

First, as discussed *supra*, neither the search nor the seizure of Plaintiffs' property was unjustified: both were statutorily sanctioned and authorized by warrant.  Second, this Court has already addressed Plaintiffs' arguments regarding storage of Plaintiff Lyon's personal property and pursuant to the court's prior Order, such arguments were precluded by his settlement agreement with the Thurston County Narcotics Task Force.  *See* Dkt. 41 at 9 ("Plaintiff Lyon forfeited the right to bring any claim whatsoever that relates to the seizure and storage of his property.").  Accordingly, Plaintiffs cause of action for conversion and/or trespass to chattel are also DISMISSED.

## V.    CONCLUSION

For the reasons discussed herein, State Defendants' motion for summary judgment, Dkt. 43, is GRANTED and this matter is DISMISSED with prejudice.  Accordingly, Plaintiffs'

motion for summary judgment, Dkt. 42, is DENIED.  The Clerk is directed to send copies of this

order to the parties.

      Dated this 16th day of January, 2025.


S. KATE VAUGHAN
United States Magistrate Judge